IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VAN DANG,<br><br>                Plaintiff,<br><br>    v.<br><br><br>TELENAV, INC., DOUGLAS MILLER, H.P. JIN, SAMUEL CHEN, WES CUMMINS, and RANDY L. ORTIZ,<br><br><br><br><br>                Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Van Dang ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Telenav, Inc. ("Telenav" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Telenav and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Telenav and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by affiliates of V99 Inc. ("V99") (the "Proposed Transaction").

2. On November 3, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with V99. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $4.80 in cash for each share of Telenav common stock owned (the "Merger Consideration").

3. On December 31, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Telenav and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Telenav shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Telenav shares.

9.      Defendant Telenav is incorporated under the laws of Delaware and has its principal executive offices located at 4655 Great America Parkway, Suite 300, Santa Clara, California 95054.  The Company's common stock trades on the NASDAQ under the symbol "TNAV."

10.     Defendant Douglas Miller ("Miller") is and has been a director of Telenav at all times during the relevant time period.

11.     Defendant H.P. Jin ("Jin") is and has been a director of Telenav at all times during the relevant time period.

12. Defendant Samuel Chen ("Chen") is and has been a director of Telenav at all times during the relevant time period.

13. Defendant Wes Cummins ("Cummins") is and has been a director of Telenav at all times during the relevant time period.

14. Defendant Randy L. Ortiz ("Ortiz") is and has been a director of Telenav at all times during the relevant time period.

15. Defendants Miller, Jin, Chen, Cummins, and Ortiz are collectively referred to herein as the "Individual Defendants."

16. The Individual Defendants, along with Defendant Telenav, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17. Telenav is a leading provider of automotive software and services providing both in-vehicle and cloud-based solutions. Over the past twenty years, Telenav's focus has been on navigation and LBS, where Telenav has pioneered many innovations including the market's first mobile cloud-based navigation service. Telenav's customers include three of the top five automotive manufacturers by revenue and sales—Ford Motor Company, General Motors Holdings and Toyota Motor Corporation.

### The Company Announces the Proposed Transaction

18. On November 3, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> SANTA CLARA, Calif.--(BUSINESS WIRE)--Telenav, Inc. (NASDAQ: TNAV), a leading provider of connected-car and location-based services, today announced that it has entered into a definitive merger agreement to be acquired by V99, Inc., a Delaware corporation led by HP Jin, Co-Founder,

President, and Chief Executive Officer of Telenav, for $4.80 per share in an all cash transaction that values Telenav at approximately $241 million. HP Jin, Samuel T. Chen, a director of Telenav, and a certain entity affiliated with Mr. Chen, are expected to provide debt financing in connection with the proposed transaction.

The per share purchase price represents a premium of approximately 33.3 percent over Telenav's closing stock price on October 1, 2020, the last full trading day prior to announcing that the Special Committee had received a non-binding "go-private" proposal from V99. Upon completion of the transaction, Telenav will become a private company with the flexibility to continue investing in its connected-car strategy.

"We are pleased to have reached this agreement with V99, which we believe will deliver immediate value to stockholders and positions Telenav to accelerate its journey towards a connected-car future with smarter, easier and safer innovation," said Douglas Miller, Lead Independent Director and a member of the Telenav Special Committee. "The transaction is the result of a thoughtful and comprehensive review of value creation opportunities available to Telenav. We are confident that this transaction is in the best interest of Telenav and all of its stakeholders, and we look forward to working with HP and V99 to complete the transaction."

"Today's announcement represents an exciting new chapter for Telenav," said HP Jin, Co-Founder, President and Chief Executive Officer. "As a private company, we will have the resources and flexibility to continue our growth and execute on our OEM-centric, connected-car strategy as the market for connected-car capabilities continues to expand. I would like to thank the Special Committee for taking the time to thoroughly evaluate and review V99's offer and Telenav's employees for their continued focus throughout this process. I am honored to continue leading Telenav through its next phase of growth and success, and I am confident Telenav will thrive as a privately held company."

**Transaction Details**

Acting upon unanimous recommendation by the Special Committee, the Telenav Board of Directors unanimously approved the merger agreement and the merger, with Messrs. Jin and Chen recusing themselves from all related discussions and abstaining from the vote. The Special Committee negotiated the terms of the merger agreement with assistance from its independent financial and legal advisors.

The agreement includes a 30-day "go-shop" period expiring on December 2, 2020, which permits the Special Committee and its advisors to solicit alternative acquisition proposals from third parties. The Special Committee

will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Telenav does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

Additionally, Messrs. Jin and Chen, Changbin Wang, and each of their affiliates and related parties, have executed a voting and support agreement with the Company, pursuant to which, among other things, such parties have agreed to vote their shares of Telenav stock in accordance with the recommendation of the Special Committee or the Telenav Board of Directors with respect to the merger agreement and the merger and to otherwise support any proposal that the Special Committee or the Telenav Board of Directors receives prior to the expiration of the "go-shop" period, and determines is a superior proposal and provides an appropriate notice to V99 on or prior to December 16, 2020, including by voting or tendering their shares of Telenav stock in accordance with the recommendation of the Special Committee or the Telenav Board of Directors, as applicable, with respect to such superior proposal.

The transaction is expected to close during the first calendar quarter of 2021, subject to customary closing conditions, including approval by Telenav stockholders, approval by Telenav stockholders holding a majority of the outstanding shares owned by stockholders other than Mr. Jin, Mr. Chen, Changbin Wang, and each of their affiliates and related parties, and receipt of regulatory approvals. Upon closing of the transaction, Telenav common stock will no longer be listed on any public market. Telenav will continue to be headquartered in Santa Clara, California.

**First Quarter 2021 Earnings Conference Call Update**

Separately, Telenav today announced financial results for the first quarter of 2021, which are available on the "Investor Relations" section of the Telenav website. In light of the announced transaction with V99, Telenav has cancelled the earnings conference call previously scheduled for November 5, 2020 at 2:00 p.m. Pacific Time. During the pendency of the transaction, Telenav will issue earnings releases consistent with its current schedule, but will suspend earnings conference calls and webcasts.

**Advisors**

B. Riley Securities, Inc. and Wilson Sonsini Goodrich & Rosati, P.C. are serving as financial advisor and legal advisor, respectively, to the Telenav Special Committee. Norton Rose Fulbright LLP is serving as legal advisor to V99, Inc.

# FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

19. On December 31, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

21. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

22. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

23. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

24. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Operating Profit; (ii) Income Before Taxes; (iii) Income From Continuing Operations; (iv) Net Income; (v) Pro-Forma Net Income; and (vi) Adjusted EBITDA.

25. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding B. Riley's Financial Opinion**

26. The Proxy Statement contains the financial analyses and opinion of B. Riley Securities, Inc. ("B. Riley") concerning the Proposed Transaction, but fails to provide material information concerning such.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27. With respect to B. Riley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) Telenav management's estimates of the impact of Telenav's NOLs; (ii) with respect to the Extension Projections, the underlying inputs and basis for applying a range of terminal value multiples of 5.5x to 6.5x to Telenav's estimated fiscal year 2025E Adjusted EBITDA and discount rates ranging from 15.5% to 20.5%; (iii) with respect to the No Extension Projections, the underlying inputs and basis for applying a range of terminal value multiples of 3.5x to 4.5x to Telenav's estimated fiscal year 2025E Adjusted EBITDA and discount rates ranging from 15.5% to 20.5%; and (iv) Telenav's free cash flows and all line items used to calculate free cash flows.

28. With respect to B. Riley's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the specific transactions observed by B. Riley for its analysis as well as the premiums paid in those transactions

29. With respect to B. Riley's *NOL Analysis*, the Proxy Statement fails to disclose the inputs and assumptions for B. Riley's application of the discount rates ranging from 16.5% to 19.5%.

30. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

31. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

37. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

38. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

41. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Telenav within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Telenav, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

46. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 31, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*